UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL JOSEPH WIK,

Plaintiff,

-vs-

CITY OF ROCHESTER, *et al.*

Defendant.

DECISION & ORDER
07-CV-6541-CJS

APPEARANCES

For Plaintiff:                           Daniel Joseph Wik
                                         659 Averill Ave
                                         Rochester, NY 14607
                                         *PRO SE*

For Defendant:                           John M. Campolieto, Esq.
                                         Thomas S. Richards, Esq.
                                         City of Rochester
                                         Law Department
                                         City Hall, Room 400-A
                                         30 Church Street
                                         Rochester, NY 14614-1295

INTRODUCTION

**Siragusa, J.** This civil rights case is before the Court on Defendants' motion (Docket

No. 13) to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure

12(b)(1), (2), (4) and (6). It is also before the Court on what appears to be a cross-motion

by Plaintiff (Docket No. 15) "dismissing the Motion and Order issuing Defendants' Extension

of Time to Answer."[1] For the reasons stated below, Plaintiff's cross-motion is denied and

---

[1]In support of this application, Plaintiff submits his "Memorandum of Law on Objection of
Order/Motion to Dismiss," in which he argues not only that Defendants improperly obtained an
extension of time in which to answer his amended complaint, but also failed to obtain personal
jurisdiction over him, and that "Defendant, John M. Campolieto has a conflict of interest

Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted.[2]

## BACKGROUND

For the purpose of adjudicating the pending motion to dismiss, the Court assumes all the allegations in the amended complaint (Docket No. 7) are true and views them in the light most favorable to the non-moving party. *See H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 249 (1989). The Court reproduces, below, three sections of Plaintiff's amended complaint:[3] Definitions, Material Facts and Federal Causes of Action.

## III. Definitions

2. "Daniel J. Wik" is both Plaintiff's name and Plaintiff's complete address.

3. Plaintiff's name was given to Plaintiff by Plaintiff's Father in a solemn religious ceremony and when Plaintiff came of competent age Plaintiff covenanted with God to keep Plaintiff's name sacred and free from perversions. Thus violating Plaintiff's name violates Plaintiff's rights to religious freedom.

4. Plaintiff's name is an English language proper noun.

---

representing any Defendants included in this action." (Pl.'s Mem. of Law, at 2.)

[2]Since the Court grants Defendants' motion to dismiss pursuant to Rule 12(b)(1), it need not address Defendants' remaining bases for dismissal pursuant to Rule 12(b)(2), (4) and (6), nor need the Court address Plaintiff's arguments relating to personal jurisdiction and conflict of interest. However, as to Plaintiff's Rule 12(b)(2) argument for dismissal based on lack of personal jurisdiction, the Court finds such argument to be without merit. Plaintiff, by commencing this lawsuit, has already subjected himself to the personal jurisdiction of this Court, and Defendants need do nothing more to preserve the Court's jurisdiction over Plaintiff. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("an individual may submit to the jurisdiction of the court by appearance.").

[3]Theses section comprise approximately fifteen pages of Plaintiff's amended complaint, which, in total, amounts to forty-two pages. The Court also notes that in his amended complaint, Plaintiff names 206 defendants.

a) Therefore, according to the rules of the English language, said name must at all times be spelled with capital and lower case letters (as it is throughout this complaint).

b) According to the English language rules Proper nouns not properly capitalized are mis-spelled; and, Implications at law indicate spellings in the nature of all capital letters can only indicate dead persons or some  fictitious business name or corporate capacity; and, Plaintiff is neither dead nor in corporate capacity;

c) Misspellings indicate some other person other than Plaintiff.

d) It is a violation of law to accept or receive mail not addressed to you.

e) Any misspelling of Plaintiff's name or address will cause the device using the misspelling to be returned marked, "Refused for Cause", as to accept or receive such would constitute a crime.

5. Plaintiff's exact mailing location is:

"c/o non-domestic, 659 Averill Avenue; near: Rochester, New York".

6. Said mailing location is a *de jure* New York Republic location, and as such is not a part of the corporation known as: "THE STATE OF NEW YORK", and is not a part of the corporation known as: "THE UNITED STATES GOVERNMENT", and therefore said location cannot be represented by corporate state or federal zone locators like, zip codes, and/or corporate state trademarks like, "NY". Mail addressed with federal such zone locators will not be delivered to Plaintiff and if such are by mistake or any other means delivered, as a  matter of law, such mail cannot be accepted or received without committing a crime and will therefore be refused....

### V. Material Facts

1. All factual contents of the "Parties" section above are included herein as if fully reproduced herein.

2. At all times relative to this action Plaintiff was the owner or had privity of title to 23-31 Anderson Avenue, 48 Ripley Street, 1244-1246 East Main Street, 179 North Union Street, 225 North Union Street, 305 North Union Street, and 366-366.5 Alexander Street, which are located in Rochester, Monroe County, New York state.

3. Plaintiff had possession of 23-31 Anderson Avenue, 48 Ripley Street, 1244-1246 East Main Street, 179 North Union Street, 225 North Union Street, 305 North Union Street, and parts of 366-366.5 Alexander Street, which are located in Rochester, Monroe County, New York state.

4. Plaintiff has personal property stored at 23-31 Anderson Avenue, 48 Ripley Street, 1244-1246 East Main Street, 179 North Union Street, 225 North Union Street, 305 North Union Street, and 366-366.5 Alexander Street.

5. On or about the 7th of December 2005 agents and/or employees for the CITY filed a *List of Delinquent Taxes* as of July 1, 2005 in the Monroe County Clerk[']s office which was assigned the Index # 13605/05 in THE STATE OF NEW YORK, COUNTY OF MONROE, SUPREME COURT.

6. The properties 23-31 Anderson Avenue, 48 Ripley Street, 1244-1246 East Main Street, 179 North Union Street, 225 North Union Street, 305 North Union Street, and 366-366.5 Alexander Street were included in the *List of Delinquent Taxes as of July 1, 2005*.

7. On or about the 5th of January 2006, Treasurer Benincasa, made a statement to the effect that being duly sworn he is the City Treasure for THE CITY OF ROCHESTER; that he is responsible for the compilation of the City's tax foreclosure list, and mailing the *Foreclosure Notices* to all owners of the properties; that the letters for each property were placed in envelopes, sealed, and were run through a postage meter regular first class postage, and mailed on December 6, 2005.

8. Plaintiff has never been served the *Petition of Foreclosure or Notice of Foreclosure* in regard to *Foreclosure of the List of Delinquent Taxes as of July 1, 2005* for 366-366.5 Alexander Street, 23-31 Anderson 8 Avenue, 48 Ripley Street, 1244-1246 East Main Street, 179 North Union Street, 225 North Union Street, or 305 North Union Street.

9. On or about the 16th of August 2006 Plaintiff filed and served the legal department for the CITY an Answer to the Foreclosure of the List of Delinquent Taxes as of July 1, 2005 denying the claim of delinquent taxes and claiming violation of plenary rights thereby creating a controversy.

10. On or about the 16th of August 2006 Plaintiff filed and served the legal department for the CITY *Notice of Interests* for the properties 366-366.5 Alexander Street, 23-31 Anderson Avenue, 48 Ripley Street, 1244-1246 15 East Main Street, 179 North Union Street, 225 North Union Street. or 305 North Union Street.

11. On or about the 4th of October 2006 Complaint had a conversation with Attorney Smith whereby Attorney Smith stated words to the effect that anyone could redeem any property from the *Foreclosure of the List of Delinquent Taxes as of July 1, 2005* by paying the delinquent years taxes or entering into a payment plan with the CITY anytime before the close of the business day prior to the tax sale auction.

12. On or about the 29th of November 2006, Treasurer Benincasa signed an affidavit to the effect that being duly sworn he is the City Treasurer for THE CITY OF ROCHESTER; that he is responsible for collecting real property taxes levied by the CITY; that the information as stated in the *List of Delinquent Taxes as of July 1, 2005* are correct to the best of his knowledge; that his staff carried out the task of mailing the Foreclosure Notices to all owners of the properties; and that the notices were mailed on December 7, 2005.

13. On or about the 29th of November 2006, Attorney Smith signed an *Attorney's Affirmation* swearing under penalty of perjury to the effect that the CITY had published a *Notice of Foreclosure* in two newspapers; a *Notice of Foreclosure* was mailed to the last known owner of each parcel; that the parcels in Schedule 4 were covered by a bankruptcy stay which prevents the commencement of an action to enforce the collection of delinquent taxes; that the parcels in Schedule 6 had *Notice of Interests* filed and these properties under 9-139(C) of the Charter must be offered for sale by public auction and that if any of these properties are redeemed prior to the auction they will be removed from the auction; and that the parcels in Schedule 8 which have not been redeemed, no notice of interest served, and no tax agreement entered into with the City requested an order granting the CITY judgment of foreclosure pursuant to Section 9-139(A) of the City Charter.

14. Attorney Smith's *Attorney's Affirmation* signed on or about the 29th of November 2006, states word to the effect that in regard to the properties in Schedule 6 all the *Notice of Interest* are hereby admitted and that if any of these parcels are redeemed prior to the time of the public auction, such properties will be removed from the auction list, and the City will, upon request, issue a Certificate of Redemption.

15. The properties 179 North Union Street, 225 North Union Street, 305 North Union Street, 48 Ripley Street, and 1244-1246 East Main Street were included in Schedule 6, and 366-366.5 Alexander Street and 23-31 Anderson Avenue were included in Schedule 8.

16. On or about the 11th of December 2006 in an *Ex Parte* term of the Supreme Court in the matter of the *List of Delinquent Taxes as of July 1, 2005* upon a motion by Counselor Richards and Attorney Smith before THE

STATE OF NEW YORK, COUNTY OF MONROE, SUPREME COURT, Justice Rosenbaum issued a[] Judgment upon the *Attorney's Affirmation* of Scott C. Smith and the Treasure's [sic] Affidavit of Charles A. Benincasa to the effect of issuing parcels in Schedule 6 to be auctioned at public auction, and parcels in Schedule 8 that a judgment be entered for the CITY to take immediate possession.

17. Plaintiff was never served noticed nor had prior knowledge of the hearing held on or about the 11th of December 2006 before Justice Rosenbaum.

18. It is public policy that the agents and/or employees of the CITY accepts payment from any party for delinquent taxes included in the Foreclosure of the List of Delinquent  Taxes as of July 1, 2005 up until the close of the day before the tax foreclosure auction for redemption of properties included in the auction.

19. The agents and/or employees of the CITY accepted payment for delinquent taxes and entered into payment agreements regarding properties included in the *Foreclosure of the List of Delinquent Taxes as of July 1, 2005* up until the close of the business day before the tax foreclosure auction for redemption of properties from numerous individuals tendering discharge of the delinquent taxes.

20. Plaintiff became aware of the *In Rem* Tax Foreclosure auction regarding the properties in the *List of Delinquent Taxes as of July 1, 2005* when Plaintiff saw a flyer a few days prior to the auction that was scheduled for the 18th of January 2007.

21. On or about the 17th of January 2007 Plaintiff (accompanied by witness, Freeman Burks) went to Rochester, Monroe County, New York state CITY Treasurer's cashiers window and timely tendered full payment under protest in lawful money [substance: 31 USC §5103; 31 USC §5112(h). form 31 USC §5112 (a)(7) and (a)(1O)J for the alleged taxes on 366-366.5 Alexander Street, 23-31 Anderson Avenue, 48 Ripley Street, 1244-1246 East Main Street, 179 North Union Street, 225 North Union Street, and 305 North Union Street to Treasury Clerk Jean Profetta (hereinafter Treasury Clerk Profetta).

22. Plaintiff told Treasury Clerk Profetta words to the effect that he was paying the alleged taxes in full under protest in lawful money of the United States of America.

23. Treasury Clerk Profetta took one coin and a receipt from the United States Mint from Plaintiff and stated words to the effect that she needed to speak to her supervisor and would return.

24. Deputy Treasurer Jones came out into the lobby and handed the single coin and receipt back to Plaintiff and stated words to the effect that the CITY refused to accept these types of coins as payment.

25. On or about the 18th of January 2007 the agents and/or employees of the CITY executed an In Rem tax foreclosure auction pertaining to the *List of Delinquent Taxes as of July 1, 2005.*

26. Plaintiff believes  the auction included 179 North Union Street, 225 North Union Street, and 305 North Union Street.

27. On or about the 22nd of January 2007 just prior to the close of the business day, Plaintiff received an *Order to Show Cause* signed by Justice Lindley requiring Plaintiff's the [sic] *Petition to Show Cause,* to be served upon the CITY before or by January 22, 2007 in regard to a hearing scheduled for the 26th of January 2007 at 9:30 am.

28. On or about the 23rd of January 2007 the legal department of the CITY and Justice Lindley were given a *Notice* of request for rescheduling the January 26, 2007 hearing due to the delayed receipt of the signed order by Justice Lindley, by no fault of Plaintiff, making it improbable to serve the CITY sufficient notice of the *Petition to Show Cause.*

29. On or about the 23rd of January 2007 the legal department for the CITY was served a *Notice of Hearing* and *Order to Show Cause* signed by Justice Lindley for a hearing on January 26, 2007 at 9:30am.

30. On or about the 25th of January 2007 Plaintiff called Justice Lindley's clerk to question the status of the request for rescheduling. Complainant was told by Justice Lindley's clerk words to the effect that Justice Lindley stated to appear at the January 26, 2007 hearing in order to allow him (Justice Lindley) to get an understanding of the points of contention and that he (Justice Lindley) would not proceed with the case at this hearing.

31. On or about the 25th of January 2007 Counselor Richards signed a Tax Foreclosure deed conveying 366-366.5 Alexander Street and 23-31 Anderson Avenue to the CITY.

32. The Tax Foreclosure deed signed by Counselor Richards on or about the 25th of January 2007 stated the former owner of 366-366.5 Alexander Street as Daniel J. Wik.

33. The Tax Foreclosure deed signed by Counselor Richards on or about the 25th of January 2007 stated the former owner of 23-31 Anderson Avenue as 23-31 Anderson Avenue Trust.

34. 23-31 Anderson Avenue Trust conveyed 23-31 Anderson Avenue to Daniel J. Wik by deed on or about the 15th of May 2006.

35. On or about the afternoon of the 25th of January 2007 Attorney Campolieto called Plaintiff and made a request to the effect of asking Plaintiff to come to City Hall to pick up the CITY'S response brief. Plaintiff told Attorney Campolieto words to the effect that he was not able to pick up said documents currently.

36. Attorney Campolieto informed Plaintiff that he would be sending them by email. Plaintiff responded to the effect that he would probably not be able to receive them until later that night or the following morning if sent by email.

37. On or about the morning ofthe 26th of January 2007 Attorney Campolieto handed Plaintiff the CITY'S response brief to the *Order to Show Cause* which in effect contained a *Motion to Dismiss.*

38. Plaintiff was not served the CITY'S response until minutes before court, this was the first time Plaintiff was made aware that the CITY through Attorney Campolieto was claiming Plaintiff had no standing, was  not the owner of the properties or had privity to title, and/or had no interest in the properties.

39. Attorney Campolieto has had copies of the deeds showing Plaintiffs [sic] privity of title for 179 North Union Street, 225 North Union Street, 48 Ripley, 1244-1246 East Main Street, and 305 North Union Street since on or about the 8th of October 2006.

40. Attorney Campolieto has appeared before the court on several occasions against Daniel J. Wik regarding 23-31 Anderson Avenue and 366-366.5 Alexander Street.

41. The property 366-366.5 Alexander Street has been recorded in the Monroe county clerks office under the owners name DANIEL J WIK since on or about the 25th of April 1996.

42. On or about the 26th of January 2007 Plaintiff appeared before Justice Lindley by special and limited appearance and not general appearance to challenge the jurisdiction of the court and the CITY and seeking the relief of removing the properties from the list of properties to be included in the *In Rem* foreclosure action which was ordered by an *ex parte* order denying Plaintiff due process and notice and opportunity to defend the action.

43. During the hearing conducted on or about the 26th of January 2007, Justice Lindley stated on the record words to the effect that an option, if

Plaintiff didn't want this to be the end of his interest in these properties, if he (plaintiff) had any interest to begin with, then they (CITY) would take, on their (CITY) terms, a bank check or money order, and Plaintiff can get all these properties back. Justice Lindley went on to say words to the effect that Plaintiff can pay the CITY the taxes and retain the properties.

44. Plaintiff stated on the record words to the effect that he questioned what authority Justice Lindley had to require him to make tendering of payment in any such form, whether he make it in pennies, dimes, nickels, dollars, gold coin. There's nothing in the law that gives Justice Lindley the authority, or the CITY the authority, to reject it.

45. On or about the 26th of January 2007 forceful entry was made into 23-31 Anderson Avenue, which Plaintiff was in possession of, and had personal property located within. Pad locks were placed on the doors and pallets of retaining wall blocks owned by Plaintiff were removed from the premise.

46. Plaintiff has never seen a warrant to evict and gain possession of the real property, or a warrant to seize Plaintiffs [sic] personal property for 23-31 Anderson Avenue or any other property relative to this action.

47. Plaintiff has never been presented by any employee, agent, and/or contractor for the CITY with any deed showing the CITY as the owner pertaining to 23-31 Anderson Avenue, 366-366.5 Alexander Street, 1244-1246 East Main Street, 179 North Union Street, 225 North Union Street, and 305 North Union Street.

48. Plaintiff has not been able to gain access to his personal property at 23-31 Anderson Avenue, including but not limited to the tools of his trade that he relies on for income for himself and his family, personal items, furniture, pictures, financial records, tax records, and materials of his trade.

49. On or about the 2nd of February 2007 Justice Lindley issued a *Decision,* to the effect that Plaintiffs [sic] didn't have any ownership interest in the properties included in the action and that Plaintiff had stated words to the effect that Plaintiff had never paid property taxes.

50. Plaintiff has never stated words to the effect that he never paid the alleged property taxes, as a matter of record Plaintiff has stated words to the effect that he timely tendered the alleged taxes in full under protest and the agents and/or employees for the CITY refused the tender.

51. On or about the first week in February 2007 the agents and/or employees of the CITY sent through the United States Postal Service letters to tenants at 366-366.5 Alexander Street, constituting a notice to the effect that the

CITY was now the owner of the building and the tenants were not to pay rent to Plaintiff.

52. On or about the second week in February 2007 Plaintiff believes person known to be Agent Fenwick, Jane Doe #1, and agents or employees for the CITY began to collect rents from tenants at 366-366.5 Alexander Street.

53. On or about the 13th of February 2007 Plaintiff sent a letter to Justice Lindley requesting a response to the clarification of the nature of the court and the demand for the need to call witnesses and present evidence in his favor.

54. On or about the 13th of February 2007 Plaintiff sent Counselor Richards a notice to the effect that Plaintiff had personal property located at 23-31 Anderson Avenue and 366-366.5 Alexander Street.

55. On or about the 25th of February 2007 Plaintiff sent Counselor Richards copies of deeds for all the disputed properties, *Notice of Interests,* and copies of the deeds showing that the agents and/or employees of the CITY had sent the *Notice of Foreclosure* to the incorrect address for 23-31 Anderson Avenue.

56. On or about the 13th of March 2007 Plaintiff sent Counselor Richards a notice to the effect that he had violated his office of trust, his oath, was operating under color of law, and that he was unlawfully detaining Plaintiff's property.

57. On or about the 23rd of March 2007 Plaintiff posted four (4) legal notices stating words to the effect "No Trespassing", and including an acceptance of entry into a private contract if trespassing occurred along with the associated fees for trespassing at 366-366.5 Alexander Street where Plaintiff had personal property stored and was in possession of the specific location.

58. This notice also contained a contact number if entry was needed.

59. The four (4) "no trespassing" notices were placed on the inside of the glass door facing outward on door #1 of the basement; on the inside of the glass door facing outward on door #2 of the basement; on the door jam of the sliding door #1 to annex building; and on the door jam of the sliding door #2 to annex building at 366-366.5 Alexander Street.

60. On or about the 26th of March 2007 Plaintiff sent Counselor Richards a letter in the effect of an invoice for personal property seized at 23-31 Anderson Avenue, due to Counselor Richards refusal to allow Plaintiff access to personal property seized, stolen, and confiscated without a warrant.

61. On or about the 26th of March 2007 Agent Fenwick was sent a letter to the effect of"no trespassing" at 366-366.5 Alexander Street and was given lawful notice of the acceptance and entry into a private contract with associated fees for trespassing if trespassing on the premises at 366-366.5 Alexander Street where Plaintiff had personal property and was in possession of those areas.

62. Plaintiff included a copy of the no trespassing signs that were placed on or near all four (4) doors where Plaintiff had personal property stored; these notices included a contact number if entry was needed.

63. On or about the morning of the 29th of March 2007 Agent Fenwick with Agent John Doe #1, and Agent John Doe #2 forcefully gained entry to the basements of 366-366.5 Alexander Street and placed new locks on doors where Plaintiff has large amount of tools of his trade, and additional personal property, money, safes, business records, tax records, bank records, and personal legal documents where Plaintiff was in possession  of and had "no trespassing" signs posted on both doors to the basement with a contact number if entry was needed and associated fees for trespassing.

64. On or about the morning of the 29th of March 2007 Plaintiff called the E-911 center to request a Monroe County Sheriff be sent to 366-366.5 Alexander Street due to the forceful entry and seizure without a warrant, involving the agents and/or employees of the and ROCHESTER POLICE DEPARTMENT.

65. The E-911 operator stated words to the effect that only the ROCHESTER CITY POLICE may respond within the City of Rochester. Plaintiff was then connected to the NEW YORK STATE POLICE and told words to the effect that the State Police have no jurisdiction in the City of Rochester and would not respond to any incident in the City of Rochester even if it involved the ROCHESTER POLICE DEPARTMENT.

66. The Monroe County E-911 center dispatched the ROCHESTER POLICE DEPARTMENT to 366-366.5 Alexander Street.

67. ROCHESTER CITY POLICE, Officer John Doe #3 and Officer John Doe #4 arrived at 366-366.5 Alexander Street, Plaintiff stated words to the effect that Agent Fenwick, Agent John Doe # 1, and/or John Doe #2 had forcefully entered the basements of 366- 66.5 Alexander Street which were posted and notification by certified mail had been sent to Agent Fenwick that Plaintiff had personal property stored in the basements, was in possession of the space, and not to trespass.

68. Plaintiff further stated words to the effect that he had no knowledge that a warrant existed and demanded a warrant be presented to enter and change the locks and that his personal property was being damaged, stolen, and seized without a warrant.

69. Officer John Doe #3 told Plaintiff words to the effect that he was made aware by the CITY of what had happened and everything was legally done, and that there was a legal process, which had to be complied with, and the CITY had done that.

70. Plaintiff stated words to the effect that he demanded a Marshal be called to the premises to photograph and inventory, Plaintiff tools, and personal property; Officer John Doe #3 and Officer John Doe #4 refused.

71. Plaintiff specifically objected to the seizure of the real property in Plaintiff's possession without warrant and due process of law.

72. Plaintiff specifically objected to the seizure of Plaintiff's personal property without warrant and due process of law.

73. Plaintiff stated words to the effect that he demanded a report of what had transpired; Officer John Doe #3 and Officer John Doe #4 refused.

74. Plaintiff stated words to the effect that he demanded an incident report of what had transpired if the officers refused to issue a criminal report; John Doe #3 and John Doe #4 refused saying words to the effect there is nothing being done which would require a criminal or incident report.

75. Officer John Doe #3 and Officer John Doe #4 refused to identify Agent John Doe #1 and Agent John Doe #2.

76. Plaintiff stated words to the effect that he demanded a key to the locks to the basements where his personal property was located and which Agent John Doe #1 and Agent John Doe #2 were changing.

77. Plaintiff was denied a key to access his personal property at his will.

78. Plaintiff called back to the E-911 center since Officer John Doe #3 and Officer John Doe #4 refused to allow Plaintiff to file a criminal or incident report or provide any documentation that: his property was being stolen, damaged, and seized; there existed no warrant to gain possession of the real property; there existed no warrant to seize or detain Complaints personal property; that Agent Fenwick, Agent John Doe #1, and Agent John Doe #2 were trespassing, that Agent Fenwick, Agent John Doe #1, and Agent John Doe #2 were forcefully braking into property in the possession of Plaintiff,

Plaintiffs [sic] valuable property was present, Plaintiffs [sic] personal property be inventoried, and to identify Agent John Doe #1 and Agent John Doe #2 or to intervene in any way.

79. At all times relevant to the facts of this complaint Defendant Officer John Doe #3 and Officer John Doe #4 were acting outside of State authorized Police Power.

80. Defendants knew or should have known that their actions violated clearly established law and violated Plaintiff's rights secured under the Constitution and were unreasonable.

81. On or about the 29th of March 2007 after leaving 366-366.5 Alexander Street where Officer John Doe #3 and Officer John Doe #4 had responded, Plaintiff called he E-9ll center again to speak with Officer John Doe #3's and Officer John Doe #4's supervisor.

82. Plaintiff received a return call from Sergeant Kmentt ofthe ROCHESTER CITY POLICE.

83. Plaintiff stated word to the effect that his constitutional rights were being violated and that Officer John Doe #3 and Officer John Doe #4 had refused to give Plaintiff any criminal report or incident report as to the crimes and incidents occurring at 366-366.5 Alexander Street.

84. Sergeant Kmentt stated words to the effect that nothing constituting a report had occurred.

85. Plaintiff stated words to the effect that he demanded a statement that Sergeant Kmentt would not allow Plaintiff to file a criminal report or even an incident report, that Sergeant Kmentt uphold the constitutions that he took an oath to uphold, that Sergeant Kmentt do the duties of his office of public trust as a police officer, and demanded he produce an warrant to the effect to allow the seizure of Plaintiffs [sic] personal property and real property and authorizing the forcible entry.

86. Sergeant Kmentt stated words to the effect that he refused to give Plaintiff a report or supply any warrant to seize Plaintiff's personal property or a statement that Sergeant Kmentt was refusing to issue such reports.

87. The agents and/or employees of the CITY have provided no warrant to seize Plaintiff's personal property located at 23-31 Anderson Avenue, 366-366.5 Alexander Street, 179 North Union Street, 225 North Union Street, and 305 North Union Street after seizing Plaintiff's real property for alleged taxes

after the taxes had been timely tendered in full under protest in lawful money and refused by the agents and/or employees of the CITY.

88. The agents and/or employees of the CITY has not served or presented Plaintiff with any deeds demonstrating ownership for any of the herein mentioned properties.

89. The agents and/or employees of the CITY have not presented Plaintiff warrants to gain possession of the real or personal property located at 23-31 Anderson Avenue and 366-366.5 Alexander Street, 179 North Union Street, 225 North Union Street, and 305 North Union Street.

90. On or about the 12th of April 2007 Plaintiff sent by certified mail a letter to Counselor Richards demanding access to his personal property and that RICHARDS provide a copy of the warrant to seize Plaintiff's personal property.

91. On or about the 16th of April 2007 Plaintiff sent an invoice to Agent Fenwick who was aware of the personal property located at 366-366.5 Alexander Street that was in the possession of Plaintiff and was aware of the fees involved demanded a copy of insurance, bond, and copy of any warrants to seize Plaintiff's personal property or trespass.

92. On or about the 23rd of April 2007 Plaintiff sent by certified mail a second invoice to Agent Fenwick and again demanded copies of his insurance, bond, and a copy of any warrants to seize Plaintiff's personal property or trespass. (This letter was returned undeliverable).

93. On or about the 1st of May, 2007 Plaintiff sent via certified mail another invoice to Agent Fenwick and a demand for a copy of Agents Fenwick's bond and insurance, and an invoice and also demanded Agent Fenwick produce a warrant that issued him the right to seize Plaintiff's personal property.

94. On or about the 3rd of May 2007 Plaintiff sent by certified mail a letter to Counselor Richards to set up a time for depositions for CITY employees Deputy Treasurer Kim Jones and Treasury Clerk Jean Profetta.

95. Counselor Richards has never responded to the request letter for the depositions of Deputy Kim Jones and Treasury Clerk Jean Profetta.

96. On or about the 14th of May 2007 Plaintiff served the court with *Subpoenas* for signature for oral examination by deposition for two CITY employees Deputy Treasurer Kim Jones and Treasury Clerk Jean Profetta who were involved in the refusal of the timely full tender under protest for the alleged taxes.

97. On or about the 30th of May 2007 Plaintiff mailed a Notice to Counselor Richard by certified mail demanding personal property seized without a warrant be returned and included a FOIL request for a copy of the warrant to seize personal property at 23-31 Anderson Avenue and 366-366.5 Alexander Street.

98. On or about the 31st of May 2007 Plaintiff sent the legal department for the CITY via certified mail a package including an unopened envelope incorrectly addressed to Plaintiff and a letter informing the CITY that the letter was incorrectly addressed to Plaintiff and that they were committing mail fraud by knowingly sending mail to an incorrect address. Plaintiff included a self-addressed stamped envelope and requested the CITY to re-mail the letter in the included envelope that was correctly addressed so Plaintiff may respond to the CITY.

99. On or about the 5th of June 2007 Plaintiff found a *Notice of Entry* of the *Decision and Order* of Justice Lindley dated May 10, 2007 on the: steps leading to the rear entry to a property that he has privity of title to and receives mail at in the form of "care of". This property located at 659 Averill Rochester, New York is posted with no trespassing with the associated fees for trespass and has a front entry door.

100. The server had trespassed into the back yard where the rear door is located and placed the *Notice of Entry* by the back door.

101. The *Notice of Entry* states words to the effect" Be advised that you have no ownership interest in any property located at 366 Alexander Street, 23-31 Anderson Avenue, 179 North Union Street, 225 North Union Street. Any attempt by you to enter or access these properties will be considered trespassing."

102. 0n or about the 12th of June 2007 the agents and/or employees of the CITY'S responded to the FOIL request for the copy of the warrants to seize personal property and to take possession of real property at 23-31 Anderson Avenue and 366-366.5 Alexander Street was that "No record was found".

103. 0n or about the 29th of June 2007 Agent Fenwick and/or agents for the CITY enter 366-366.5 Alexander Street, 366-366.5 Alexander Street basement, and 366-366.5 Alexander Street auxiliary building trespassing again.

104. Plaintiffs [sic] repeatedly demanded that the Defendants produce warrants and none has ever been provided.

105. Plaintiff did not consent to having his property seized and specifically objected to all such warrantless seizure.

106. Plaintiff did not consent to having his property searched and specifically objected to all such warrantless searches.

107. Responses from FOIL requests from the agents and/or employees of the CITY shows that at least Treasurer Benincasa have failed to file oaths of office and bonds within thirty days after commencement of their office as is required by New York State Public Officers Law.

108. Each and every act perpetrated by Defendants and set forth herein was done in bad faith, in their presumed capacity as public officials; and, each such act was done under the color and pretense of the laws, statutes, ordinances, regulations, customs, policies, practices, and usage, either written or unwritten of CITY, and of THE STATE OF NEW YORK.

109. All Defendants knew or should have known that their actions both substantially and procedurally deprived Plaintiff of liberty and property without due process of law, violated clearly established law and Plaintiff's natural, Constitutional and civil rights, and were unreasonable.

110. All of the actions of the Defendants were committed wantonly, recklessly, willfully, in bad faith, and maliciously with the intention to seize, search, and oppress property of Plaintiff without Plaintiff's consent, in accordance with a preconceived, routine, and customary plan established by CITY and without regard to the lawful system of justice in the United States of America.

111. All of the actions of the Defendants stated herein are part of a pattern and practice of such actions within CITY establishing a reckless disregard and indifference to due process of law, keeping the peace, and protecting the citizenry.

112. The actions of the Defendants stated herein have and will continue to cause harm to Plaintiff.

## VI. Federal Causes of Action

### *As and for a first cause of Action*

Plaintiff's real property was seized without a warrant, without a court order, and over Plaintiff's specific and repeated objection without due process in direct violation of the Fourth and Fourteenth Amendments.

### As and for a second cause of Action

Plaintiff's personal property was seized without a warrant, and over Plaintiff's specific and repeated objection without due process in direct violation of the Fourth and Fourteenth Amendments.

### As and for a third cause of Action

Plaintiff real property was searched without Plaintiff's consent and against Plaintiff's specific objection without: a warrant, probable cause, or other legal privilege without due process of law in direct violation of at least the Fourth and Fourteenth Amendments.

### As and for a fourth cause of Action

Plaintiff personal property was searched without Plaintiff's consent and against Plaintiff's specific objection without: a warrant, probable cause, or other legal privilege without due process of law in direct violation of at least the Fourth and Fourteenth Amendments.

### As and for a fifth cause of Action

Plaintiff was punished and forced to suffer mental and emotional cruel and unusual punishment in violation of Plaintiff's right's to due process of law secured from government and State violation in direct violation of the Fourth, Eighth, and Fourteenth Amendments.

### As and for a sixth cause of Action

Plaintiff was deprived of liberty and property without substantive or procedural due process of law, plaintiff's rights, privileges, and immunities were abridged, and plaintiff was denied equal protection under the law, all in direct violation of the Fourteenth Amendment.

### As and for a seventh cause of Action

Upon information, belief, and other verified examples, with respect to individual's rights as protected by the Constitution, CITY is being sued as a person for failing and/or neglecting to properly train, manage, and supervise its employees to assure competence of the personnel and especially its police officers, treasurer, deputy treasurer, legal counsel, employees, agents, contractors, and attorneys; or to implement meaningful procedures and policies to discourage lawless official conduct; or to take corrective action against personnel whose vicious propensities were notorious. This failure and neglect was the direct and proximate cause of the deprivation of

Plaintiff's rights which rights are secured against CITY by the Constitution as set forth herein.

### As and for a eighth cause of Action

Upon information, belief, and other verified examples, CITY is being sued as a person, torturing Plaintiff by and through a maintained policy, pattern, custom, and practice under color of law of depriving people of life, liberty and property, unreasonably seizing, searching, and stealing property, and causing people damage without a warrant, probable cause, or other lawful privilege and other violations as set forth herein in violation of the Fourth, Eighth, and Fourteenth Amendments.

(Am. Compl., at 5-6, 22-37 (emphasis in original).) Plaintiff seeks a declaratory judgment,

equitable relief, and compensatory and punitive damages. (Am. Compl., at 38.)


### STANDARDS OF LAW

Plaintiff invokes the Court's jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4),

and 42 U.S.C. §§ 1983, 1985, 1986 and 1988. *Pro se* pleadings should be characterized

according to the relief sought, and not to the label given to them by *pro se* litigants

unlearned in the law. *See Chambers v. United States*, 106 F.3d 472, 475 (2d Cir. 1997).

Section 1983 provides in relevant part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As the Supreme Court observed in *Lynch v. Household Finance Corp.*,

405 U.S. 538, 543 (1972) (footnote omitted),

This Court has traced the origin of § 1983 and its jurisdictional counterpart to the Civil Rights Act of 1866, 14 Stat. 27. *Adickes v. S. H. Kress & Co.*, 398

U.S. 144, 162-63 [(1970)]; *Monroe v. Pape*, 365 U.S. 167, 171, 183-85 [(1961)]…. That Act guaranteed "broad and sweeping…protection" to basic civil rights.

Plaintiff brings this action pursuant, in part, to § 1983. In order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993).

In considering a motion for dismissal under Rule 12(b)(2), the Court must determine whether it has personal jurisdiction over the moving defendants. As the court observed in *Daniel v. American Bd. Of Emergency Medicine*, 988 F. Supp. 127 (W.D.N.Y. 1997):

> In deciding a motion to dismiss for lack of personal jurisdiction, the court has discretion to proceed either upon written submissions or through a full evidentiary hearing. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Prior to discovery, a plaintiff may defeat a motion to dismiss by pleading "legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

*Daniel*, 988 F. Supp. at 201. In the case at bar, no discovery has been conducted, therefore, the Court will proceed upon the written submissions. When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). Where, as here, the "court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials." *Bank Brussels Lambert*, 171 F.3d at 784 (*quoting Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

-19-

The motions authorized by Federal Rules 12(b)(4) and 12(b)(5) permit the defendant to challenge departures from the proper procedure for serving the summons and complaint and the contents of the former for purposes of giving notice of the action's commencement. The procedural requirements for proper service are set forth in Rule 4 and they are incorporated by Rule 12(b).The defendant is free to interpose any objection he or she may have to the adequacy of the summoning process by way of a motion under these two subdivisions of Rule 12(b).

5B Fed. Prac. & Proc. Civ.3d § 1353 (2008) (footnotes omitted).

With regard to a motion under Rule 12(b)(6), the U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955 (May 21, 2007), clarified the standard to be applied to a 12(b)(6) motion:

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted).  *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803 (2d Cir. Jun. 14, 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)   When applying this standard, a district court must accept the allegations

contained in the amended complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).  On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

## ANALYSIS

### Plaintiff's Cross-Motion to Dismiss

The Court will first address Plaintiff's cross-motion to dismiss based on his argument that the Court has not acquired jurisdiction as a result of Defendants' alleged failure to comply with Western District of New York Local Rule of Civil Procedure 7.1(g). (Docket No. 15, at 2-3.) Plaintiff's arguments stem from his contention that Defendants failed to provide him with notice of their request to extend the time to answer or otherwise respond to the amended complaint. Summons were returned executed and docketed on March 13 and 18, 2008. Those returns shows that the amended complaint was served on the named defendants as early as February 29, 2008, and as late as March 13, 2008. The Clerk, in the docket entries, noted that Defendants' answers were due, depending on each Defendant's individual date of service, either March 20 or April 4, 2008. Prior to the earliest date for a required answer, Defendants moved on March 19, 2008 (Docket No. 10), for an extension of time, and the Court granted the motion on March 19, 2008 (Docket No. 11), pursuant to Federal Rule of Civil Procedure 6. That Rule states in pertinent part as follows:

> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:

(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires….

Fed. R. Civ. P. 6(b)(1)(A) (2007). As the Rule makes clear, no notice was required, though the Court agrees that when a motion is filed, the better practice under this Rule is to serve the application by mail on the opposing party. In this case, Defendants did not file proof of service of the motion. Nevertheless, as a result of the Court's Order, the due date for Defendants' answer was extended to March 31, 2008. On March 31, 2008, Defendants sent a letter to the Court, with a copy sent by U.S. Mail to Plaintiff, requesting a second extension, which the Court granted on the same day. (Docket No. 12.) The answer due date was thus extended by five days under Rule 6 to April 4, 2008. On that date, Defendants filed the present motion to dismiss (Docket No. 13) pursuant to Federal Rule of Civil Procedure 12. A motion filed under that rule has the following effect on the requirement to file an answer:

(4) Effect of a Motion. Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

(A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 10 days after notice of the court's action…

Fed. R. Civ. P. 12(a)(4)(A) (2007). Accordingly, by filing the motion to dismiss before the deadline for answering the amended complaint, Defendants have not defaulted, and their answer will be due pursuant to Rule 12, quoted above.

The Court must also address Local Rule 7.1 raised by Plaintiff in his memorandum, which states in pertinent part that, "[a]ll pleadings, notices and other papers shall be served and filed in accordance with the Federal Rules of Civil Procedure." Loc. R. Civ. P. 7.1(a) (2003). Since Federal Rule of Civil Procedure 6 specifically permits a litigant to request an

extension of time without notice to the opposing party, Defendants' failure to notify Plaintiff of its first request is inconsequential. Only if the request for an extension was made after the expiration of the original due dates would a notice of motion be critical. Fed. R. Civ. P. 6(b)(1)(B).

### Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

In support of their motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants maintain that,

> [t]he Court does not have jurisdiction in this matter. The plaintiff is stopped [sic] from bringing this action in Federal District Court because of the initiation of the Supreme Court proceeding. He has chosen his venue and a decision has been rendered. The plaintiff in this case has not alleged deficiency with the New York State system and is thus estopped from initiating this action in Federal Court. *Dixion v. Oisten*, 62 Fed. Appx. 105; 2003 U.S. App. LEXIS 8512.

(Defs.' Mem. of Law, at 6.) In this regard, Defendants are obviously referring to Plaintiff's admission in paragraph 49 of his amended complaint that,

> [o]n or about the 2nd of February 2007 Justice Lindley issued a *Decision,* to the effect that Plaintiffs [sic] didn't have any ownership interest in the properties included in the action and that Plaintiff had stated words to the effect that Plaintiff had never paid property taxes.

(Am. Compl., Sec. V, ¶ 49.) It is undisputed that "Justice Lindley" is a reference to New York State Supreme Court Justice Stephen K. Lindley, and that the properties referred to in his decision are the real properties referenced in Plaintiff's amended complaint.[4] Since Plaintiff concedes that Justice Lindley determined that he did not have any ownership interest in the real properties that are the subject of this action, Defendants argue that Plaintiff is improperly attempting to appeal Justice Lindley's decision in this federal forum by

---

[4]As discussed later, at 26-27, the Alexander Street properties were not discussed in Justice Lindley's decision.

commencing a civil rights lawsuit. Included in Defendants' papers is a copy of Plaintiff's notice of appeal to the New York State Supreme Court, Appellate Division, Fourth Department, regarding an order docketed May 22, 2007, claiming that the "order denied him a hearing for a petition to modify, vacate, or set aside previous orders dated February 2, 2007 and December 11, 2006…." (Def.s' Ex. I.)

Defendants rely on *Dixion v. Oisten*, No. 02-2142, 62 Fed. Appx. 105 (6th Cir. May 1, 2003). In its decision, the Sixth Circuit held that the plaintiff could not file a civil rights action alleging that his conviction was invalid, where such conviction had not been reversed. The Circuit court there relied on *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), in which the Supreme Court stated:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Heck*, 512 U.S. at 486. In its research, the Court reviewed the case of *Tucker v. Northeast Sav., F.A.*, 675 F. Supp. 763 (D. Conn. 1987). In that case, the district court found that the plaintiff sought,

> to relitigate the state proceedings by the device of naming as defendants the party which prevailed in state court and its attorney. This is no less an attempt to convert an appeal of a state judgment into a § 1983 cause of action. The portions of the complaint which allege that plaintiff was deprived of property without due process of law by defendants' application of the rent receiver procedures of Practice Book §§ 504-510 in the state foreclosure proceedings must be dismissed for lack of subject matter jurisdiction.

*Tucker*, 675 F. Supp. at 767. As Plaintiff's amended complaint makes clear, the New York State Supreme Court entered a judgment against him concluding that he did not have an

ownership interest in the properties that are the subject of this lawsuit. It is equally clear that in commencing this lawsuit, Plaintiff is, in effect, challenging that judgment. In that regard,

> Under the *Rooker-Feldman* doctrine, a plaintiff may not initiate a federal court action that: (1) directly challenges a state court holding or decision; or (2) indirectly challenges a state court holding or decision by raising claims in federal court that are inextricably intertwined with the state court judgment, even if the claim is that the state court's action was unconstitutional. *Feldman*, 460 U.S. at 486; *see Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198-200 (2d Cir. 1996); *Smith v. Wayne Weinberger P.C.*, 994 F. Supp. 418, 423 (E.D.N.Y.1998).

*Dockery v. Cullen & Dykman*, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000). The Supreme Court made clear in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), that only *it* can entertain a direct appeal from a state court judgment. Further, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.3 (1983), the Supreme Court stated that federal courts do not have jurisdiction over claims that are inextricably intertwined with state court determinations.

In the present lawsuit, Plaintiff contends that the State court judgment is in error. He does not contest that the State court had jurisdiction over the matter when it rendered its judgment. In this posture, the Supreme Court's opinion in *Rooker* is informative:

> It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject-matter and the parties, that a full hearing was had therein, that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the state on an appeal by the plaintiffs. 131 N. E. 769. If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication.… Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. Judicial Code, § 237, as amended by Act Sept. 6,

1916, c. 448, § 2, 39 Stat. 726 (Comp. St. § 1214). To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original. Judicial Code, § 24 (Comp. St. § 991).

*Rooker*, 263 U.S. at 415-16. Here, Plaintiff could have appealed the State court order permitting the foreclosures (which it appears he may have attempted, but the documents before the Court do not indicate he carried out the appeal), but instead, is essentially attempting to obtain a *writ of certiorari* for review of the State court decision by filing a civil rights action in this Court. As was the case in 1923 when *Rooker* was decided, only the Supreme Court has jurisdiction to hear an appeal from a state court action in which an appellant claims a constitutional violation, 28 U.S.C. § 1257[5] (1988), and the district courts have original jurisdiction, not appellate jurisdiction, 28 U.S.C. § 1331 (1980).

In addition, Defendants rely on the Tax Injunction Act, which reads as follows:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341 (1940). Thus, even if commenced originally in this Court, jurisdiction would not lie. *See Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 378-79 (6th Cir. 1993) ("challenge to the tax foreclosure on [the plaintiff's] real property was barred by the Tax Injunction Act."). Therefore, Defendants' motion to dismiss for lack of

---

[5]"Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."

subject matter jurisdiction is granted with respect to all the real properties identified in Plaintiff's amended complaint, except for 366-266.5 Alexander Street.

As Defendants concede in their memorandum of law in support of the motion to dismiss, at 8, Plaintiff owned the Alexander Street property at the time of the commencement of this action. The Court has not seen that property listed as among those included in the prior State court action. Thus, the Court does not find that the dispute over that property is foreclosed by application of the *Rooker/Feldman* doctrine. However, the Tax Injunction Act, 28 U.S.C. § 1341 (1940) applies here, and Plaintiff has failed to allege that remedies available through the State court system are inadequate, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 721 (1999). Consequently, there is no basis for a claim in the Court with regard to the taking of 366-365.5 Alexander Street as a result of a foreclosure action for unpaid taxes.

With regard to Plaintiff's claims concerning his personal property, at an earlier hearing on Plaintiff's motion for a temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil Procedure 65, the Court determined that no basis existed for equitable relief, but directed the parties to make arrangements to have Plaintiff's property secured and removed from the real property now belonging to the City of Rochester. (Memorandum and Order, No. 07-CV-6541 (W.D.N.Y. Dec. 6, 2007), Docket No. 5.) Since that ruling, Plaintiff informed the Court by letter that the City was removing his property without permission. By separate Notice, the Court scheduled a status conference for Friday, November 14, 2008, to address the personal property issues.

Nevertheless, Defendants raise two issues that the Court will address in this decision and order: (1) failure to obtain the Court's permission prior to filing an amended complaint,

and (2) failure to properly serve the named defendants. Plaintiff filed his amended complaint on February 28, 2008. Summonses were issued by the Clerk on the same day. From the inception of the case on November 5, 2007, until the filing of the amended complaint, no answer or moving papers were filed by Defendants. In fact, from the two staff notes on the docket, it appears that Defendants had not been served until less than two weeks prior to March 11, 2008. Federal Rule of Civil Procedure 15(a) allows a plaintiff to file one amendment as a matter of course if done before being served with a responsive pleading. Fed. R. Civ. P. 15(a) (2007). Thus, Plaintiff did not need to seek the Court's permission to file an amended complaint.

Turning to the question of service, Federal Rule of Civil Procedure 4 governs. A docket entry for March 13, 2008, shows the following:

> SUMMONS Returned Executed by Daniel Joseph Wik. Thomas Richards (in his personal and individual capacity) served on 2/29/2008, answer due 3/20/2008; Thomas Richards (in his official capacity) served on 2/29/2008, answer due 3/20/2008; Charles Benincasa served on 2/29/2008, answer due 3/20/2008; John M. Campolieto (in his personal and individual capacity) served on 2/29/2008, answer due 3/20/2008; John M. Campolieto (in his official capacity) served on 2/29/2008, answer due 3/20/2008; Richard Fenwick (in his personal and individual capacity) served on 3/3/2008, answer due 3/24/2008; Richard Fenwick(in his official capacity) served on 3/3/2008, answer due 3/24/2008; Scott Smith (in his personal and individual capacity) served on 2/29/2008, answer due 3/20/2008; Scott Smith(in his official capacity) served on 2/29/2008, answer due 3/20/2008; Kim D. Jones (in his personal and individual capacity) served on 2/29/2008, answer due 3/20/2008; Kim D. Jones (in his official capacity) served on 2/29/2008, answer due 3/20/2008; City of Rochester served on 2/29/2008, answer due 3/20/2008.

A subsequent docket entry on March 18, 2008, indicates service on "Eric Kmentt (in his personal and individual capacity) served on 3/13/2008, answer due 4/2/2008; Eric Kmentt

(in his official capacity) served on 3/13/2008, answer due 4/2/2008." Thus, it appears to the Court that those individuals and entities listed above have been served.

The only remaining defendants who have not been served are the "John Doe" defendants, whom Plaintiff has yet to identify. Nevertheless, Defendants argue that they must be dismissed as parties since the amended complaint fails to allege how they violated the law or injured Plaintiff. *Humpherys v. 25-35 Tennis Associates*, 962 F. Supp. 347, 351 (E.D.N.Y. 1997). "The courts have consistently held that, where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981) (citations omitted). The amended complaint contains separate allegations against John Does one through four. (Am. Compl., at 15-20.) The amended complaint also lists additional John Does, five through 199, and Jane Does one through 199, in the caption, with sweeping allegations against them collectively. (Am. Compl., at 21-22.) Since this is a *pro se* complaint, the Court will broadly construe the allegations to allege violations of Plaintiff's rights under the Constitution, and deny Defendants' motion to dismiss without prejudice. This issue can be revisited once Plaintiff has had time to discover the unnamed defendants, after which the Court will entertain a second motion to dismiss if necessary.

Defendants further ask the Court to dismiss the claims against Defendants who are employees of the City of Rochester sued in their official capacities, since those claims are duplicative of the claims against the municipality, citing *Nogue v. City of New York*, No. 98-CV-3058 (E.D.N.Y. 1999). The Court agrees, and dismisses the claims against the named

defendants in their official capacities, since Plaintiff has already named their employer, the City of Rochester, as a defendant.[6]

Defendants also allege that the amended complaint fails to comply with Federal Rule of Civil Procedure 8(a). The amended complaint contains, according to Defendants, 43 pages and over 250 separately-numbered paragraphs "comprising multiple and repetitive causes of action." They have set out a chart indicating that at least the first claim appears not to name any individual defendants. Though Defendants seek dismissal of the amended complaint, they set forth no authority for such relief. The Court construes their argument as one made under Federal Rule of Civil Procedure 12(e) for a more definite statement, and grants that motion.

Accordingly, it is hereby

ORDERED, that Defendants' motion (Docket No. 13) is granted in part in that Plaintiff's claims against any defendant with regard to deprivation of real property are dismissed; and it is further

ORDERED, that all claims against the individual named defendants in their official capacities are dismissed as duplicative of the claims against the municipality City of Rochester; and it is further

ORDERED, that Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 8(a) is construed as a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), and that motion is granted; Plaintiff is to file a more definite statement with regard to the first claim, identifying the defendant or

---

[6]Defendants have not argued in their memorandum of law that the claims against Defendants in their personal capacities are insufficient.

defendants who are alleged to have violated Plaintiff's Fourth and Fourteenth Amendment Rights and how they allegedly did so; Plaintiff's more definite statement is to be filed within ten days of the date of this Decision and Order; and it is further

ORDERED, that Plaintiff's failure to file a more definite statement pursuant to this Court's Order shall result in having the first claim of amended complaint stricken; and it is further

ORDERED, that Defendants' motion (Docket No. 13) is otherwise denied, without prejudice to renew the motion to dismiss against the Jane and John Doe defendants as set forth in the discussion, above; and it is further

ORDERED, that Plaintiff's motions (Docket Nos. 15 & 17) are denied; and it is further

ORDERED, that the parties appear before the Court as set forth in the Notice docketed on November 4, 2008, or on any rescheduled date.

IT IS SO ORDERED.

Dated:   November 13, 2008
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J.  SIRAGUSA
United States District Judge