# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

DANIEL JOSEPH WIK,

                       Plaintiff,

                  DECISION & ORDER

-vs-

                  07-CV-6541-CJS

CITY OF ROCHESTER, *et al.*

                       Defendant.

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Daniel Joseph Wik *pro se*<br>659 Averill Ave<br>Rochester, NY 14607 |
| For Defendant: | John M. Campolieto, Esq.<br>Thomas S. Richards, Esq.<br>City of Rochester<br>Law Department<br>City Hall, Room 400-A<br>30 Church Street<br>Rochester, NY 14614-1295 |

## INTRODUCTION

**Siragusa, J.** Plaintiff *pro se* challenges the issuance of a Decision and Order (Docket No. 93) by United States Magistrate Judge Jonathan W. Feldman, which denied Plaintiff motion (Docket No. 86) for sanctions. Plaintiff has challenged the authority of Judge Feldman to rule on his motion for contempt of court and sanctions. Plaintiff's motion (Docket No. 86) does not specify whether sanctions are sought under Federal Rule of Civil Procedure 37, or 11. The authority of a Magistrate Judge to finally resolve a motion for sanctions under Rule 11 is unsettled in the Second Circuit. *Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010) (Cabranes, J., concurring; Leval, J., concurring; Jacobs, C.J., concurring). The Court, thus,

will interpret Plaintiff's "Refusal for Cause of Fraud" (Docket No. 95), received by the Court on April 29, 2010, as an appeal from the decision of Judge Feldman only as it pertains to Plaintiff's motion for sanctions (Docket No. 86), and, upon review, the Court affirms Judge Feldman's decision, and further denies Plaintiff's outstanding motion (Docket No. 59) seeking sanctions against Defendants for their alleged failure to comply with the Court's February 18, 2009, Order.

## BACKGROUND

On November 20, 2008, Plaintiff filed a motion (Docket No. 24) to compel Defendants to permit him to inspect his personal property removed from 366–366.5 Alexander Street and that was, at that time, being stored in a warehouse on 382 Avery Street, Rochester, New York. (Docket No. 24 ¶¶ 12–15.) On November 23, 2008, the Court issued a motion scheduling order (Docket No. 28) directing Defendants to respond to Plaintiff's motion by December 12, 2008. In his application (Docket No. 24), Plaintiff alleged, *inter alia*, that:

> 12. On or about Wednesday the 19th of November 2008 at approximately 2:00 pm, at the wharehouse [sic] where my property is being detained at (382 Avery Street Rochester, Monroe County, New York) I showed Mr. Campolieto the transcript and tried to resolve the matter.
>
> 13. After presenting Mr. Campolieto with the transcript at the warehouse he refused to allow the inspection of the property if I was to video tape it.
>
> 14. Under duress and objection I inspected the property to be in compliance with the court[']s order.
>
> 15. Upon inspecting some of the items and questioning a John Doe with "Champion Moving and Storage" John Doe stated words to the effect that not all the items have been removed from the 366-366.5 Alexander Street property....
>
> 19. The remaining property at the storage facility was in the comer of a basement, stored in a manner that there was one "aisle" to walk down and inspect a few items. The rest of the items were stored in boxes and totes that could not be view. An attempt was made to go back to view some items and

> entry was not able to occur because of the manner the items were stored. I requested if there were people or equipment so the heavy items could be moved so I could enter to view and inspect and Mr. Campolieto responded with words to the effect that there were no personnel or equipment to move the items. I was unable therefore to inspect any of the items that were not in the "aisle" or two sides not against the walls of the warehouse.
>
> 20. Items such as cabinets with numerous draws [sic] had been saran wrapped closed and all the items allegedly removed and bagged for transportation but were packed in boxed [sic] that could not be verified, viewed, or inspected.
>
> 21. At the end of the 30 minutes I estimated I had inspected and/or inventoried approximately 5% of my personal property. At this time Mr. Campolieto told me I had to leave.
>
> 22. I stated words to the effect to Mr. Campolieto that I was not given "reasonable" time to inventory my personal property in order to determine if an amicable solution could be possibly reached, and needed more time.
>
> For the foregoing reasons the I request an order from the court that:
>
> 1. I be given one (1) day to inspect and/or inventory my personal property and be allowed to photograph and/or videotape my property.
>
> 2. That after inspection of my personal property I be given two (2) days to respond back to the court if an amicable resolution may be reached.

(Affirmation in Support of Motion to Clarify and Compel Inspection of Property (Docket No. 24) ¶¶ 12–15, 19–22 & at 5.)

Defendants did not file any response to Plaintiff's motion (Docket No. 24) and on February 18, 2009, the Court entered an Order (Docket No. 37) granting Plaintiff's unopposed motion (Docket No. 24), stating as follows:

> There being no opposition to Plaintiff's motion (Docket No. 24) to clarify and compel, that motion is granted. Defendants are directed to permit Plaintiff a day to inspect his property. Both parties are to comply with Federal Rule of Civil Procedure 34. Plaintiff shall have until February 23, 2009, to file the information required by Rule 34(b)(1), after which Defendants shall comply with Rule 34(b)(2). Any disputes that cannot be resolved in good faith, will be referred to the Court for resolution.

(Decision and Order, *Wik v. City of Rochester*, No. 07-CV-6541 (W.D.N.Y. Feb. 18, 2009) 4. (Docket No. 37).)

On February 23, 2009, Plaintiff filed what he entitled, "Request for Production and Inspection" (Docket No. 40). In that filing, Plaintiff requested the City of Rochester to comply with the Court's February 18, 2009, Order directing inspection of his property as described in Docket No. 24. However, in his February 23, 2009, request (Docket No. 40), Plaintiff expanded upon the areas he wanted to access to view his property. Whereas in his request in Docket No. 24, Plaintiff mentioned only "the 366-366.5 Alexander Street property," (Docket No. 24), and in his Request for Production and Inspection (Docket No, 40), he requested: "That defendants produce and permit Daniel Joseph Wik and my agents to inspect, inventory, photograph, and videotape all of my property that was located at and removed from 366-366.5 Alexander Street, 23-31 Anderson Avenue and 31 Arlington Street, 179 North Union Street, 225 North Union Street, and 305 North Union Street." (Docket No. 40 ¶ 1.) Since Docket No. 40 was a request made pursuant to Federal Rule of Civil Procedure 34(b)(1), Defendants were required to respond to it within thirty days of being served with it. Fed. R. Civ. P. 34(b)(2)(A). The Clerk's docket sheet for this lawsuit does not show that Defendants responded to Docket No. 40.

On March 23, 2009, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Court entered an Order (Docket No. 53) referring this case to the Judge Feldman for, *inter alia*, hearing and disposition of all non-dispositive motions or applications. On April 1, 2009, Plaintiff filed what he entitled, "Notice of Motion for Contempt/Sanctions for Violation of Pretrial Order." (Docket No. 59). In Docket No. 59, Plaintiff referred to the Court's February 18, 2009, Order and his request for production (Docket No. 40). In Docket No. 59, Plaintiff sought the following relief:

-4-

> For the foregoing reasons I am entitled to and I request the court to issue an:
>
> 22. Order holding Defendants and Counsel in contempt and committing them to the custody of the US Marshals until such time as they produce and allow me to inspect my property as ordered by the court and requested in my Request for Production.
>
> 23. Order for Entry of Default against all the Defendants.
>
> 24. Order Defendants to reimburse my agents and me for the time and expenses caused by Defendants not appearing for the inspection, and for my time to bring this motion.
>
> 25. Order compelling the Defendants to provide me with the information requested regarding John Does and people who removed some of my personal property from all the properties names and addresses and any bonding and insurance information.
>
> 26. Order any additional sanctions and compensation as the Court deems just and fair.

(Docket No. 59, at 4-5.) In a court appearance on May 7, 2009, Plaintiff represented that a City employee had informed him that some of his personal property was still at 366 Alexander Street, in the auxiliary buildings and basement. (FTR Recording 3:48:09–3:48:25.) Although the City's counsel represented that he would submit an affidavit the following day from the supervisor of the crew that moved the personal property from 366–366.5 Alexander Street that no further property remains at the Alexander Street addresses (FTR Recording 3:52:27–3:52:54), the Court set June 1, 2009, as the date for Defendants to respond with an affidavit concerning the property at 366 Alexander Street. (Docket No. 65.) Plaintiff then brought up the issue of personal property at 27–31 Anderson Avenue, and stated that, to his knowledge, none of his personal property had been moved from those locations. (FTR Recording 3:49:24–3:49:37.) The City attorney replied that the Anderson Avenue addresses

had never been titled to Plaintiff, and Plaintiff countered that this fact was irrelevant. (FTR Recording 3:49:39–3:49:59.)

Following the court appearance on May 7, 2009, the Court, on May 13, 2009, docketed a Memorandum and Order (Docket No. 68), which stated:

> Instead of clarifying the [sic] his claim under the first cause of action in his amended complaint, Plaintiff's More Definite Statement [Docket No. 38] has muddied that claim sufficiently to make it unclear as to whether it pertains to real property, and if so, which real property, or personal property, or both, and if the latter, then the More Definite Statement clearly amends the first cause of action, which, by its own terms, applied only to real property. Although the Court has repeatedly advised Mr. Wik to obtain counsel, he has not done so. Since Plaintiff is *pro se*, the Court will liberally construe the first cause of action to allege deprivation of both real and personal property in violation of Plaintiff's Fourth Amendment and Due Process rights.
>
> Plaintiff's More Definite Statement, however, does not address the issue the Court raised in its November 13, 2008, Decision and Order pertaining to the Tax Injunction Act, which the Court found precluded litigation over the real property at Alexander Street. Accordingly, the Court adheres to its previous determination that all causes of action pertaining to Defendants' alleged deprivations of Plaintiff's rights with respect to his real property are precluded, either by the *Rooker-Feldman* doctrine, or by the Tax Injunction Act. Claims pertaining to personal property may proceed. Consequently, it is hereby
>
> ORDERED, that all claims pertaining to Plaintiff's allegations of deprivations of his constitutional rights with respect to Defendants' taking of his real property are dismissed; and it is further
>
> ORDERED, that all claims pertaining to Plaintiff's allegations of deprivations of his constitutional rights with respect to Defendants' taking of his personal property may proceed.

(Memorandum and Order, *Wik v. City of Rochester*, No. 07-CV-6541 (W.D.N.Y. May 12, 2009) (Docket No. 68) 4–5.)

On July 10, 2009, Defendants filed "Responsive Affirmation to Plaintiff's Motion for Sanctions" (Docket No. 74). In that response, Defendants opposed Plaintiff's request for

sanctions, contending that as of January 22, 2009, all of Plaintiff's personal property had been sold at auction. Thus, as of the date of the Court's February 18, 2009, Order, Defendants contend the property was no longer in their possession. (Docket No. 74 ¶ 39.)

On July 20, 2009, Plaintiff responded to Docket No. 74 by filing what he titled, "Notice of Motion to Strike" (Docket No. 76). In his papers, Plaintiff argued that Defendants' response (Docket No. 74) was untimely and should be disregarded by the Court. Docket No. 74. In addition to addressing Plaintiff's Motion for Sanctions, Defendants' filing contained an application, pursuant to Federal Rule of Civil Procedure 6(b), seeking an extension of time and pleading excusable neglect for making the extension application out of time. More specifically, Defendants' counsel stated that he overlooked the deadline set in the docket entry of the minutes from the May 7, 2009, hearing, which included the following:

> Minute Entry for proceedings held before Hon. Charles J. Siragusa: Plaintiff appearing *pro se*. John Campolieto appearing on behalf of defendant. Motion Hearing held on 5/7/2009 re 51 MOTION to Strike; 48 Answer to Complaint, filed by Daniel Joseph Wik - denied; 39 MOTION for Reconsideration re 5 Order on Motion for Preliminary Injunction filed by Daniel Joseph Wik - denied; 42 MOTION for clarification of the court order issued on 2/18/09 re 37 Order on Motion to Amend/Correct, Order on Motion to Compel, Order on Motion to Set Aside, Order on Motion to Withdraw, filed by Daniel Joseph Wik - denied; 54 MOTION to Strike 48 Answer to Complaint, filed by Daniel Joseph Wik - denied. Set Deadlines/Hearing as to 59 MOTION for Sanctions - MOTION for contemp. Responses due by 6/1/2009. Oral argument to be scheduled. (Court Reporter Karen Bush.) (KJA) (Entered: 05/11/2009)

He further stated that his neglect, "was due in large part to the extreme number of motions brought by the *pro se* plaintiff at such an early stage of the litigation." (Docket No. 74 ¶ 37.) The Court set a briefing schedule (Docket No. 81) for Plaintiff's motion to strike. Meanwhile, several other pending motions were handled by Judge Feldman under the earlier-described referral. On September 10, 2009, Defendants filed Docket No. 84, their response to Plaintiff's

-7-

motion to strike. In his answering affirmation, defense counsel outlined the history of the case from the initial complaint through the latest motions. Counsel repeated his contention that the City had disposed of all Plaintiff's personal property in a January 22, 2009, auction (Docket No. 84 ¶ 11) and that prior to that sale, the City did permit Plaintiff to inspect the property (Docket No. 84 ¶ 20). Counsel further reiterated his Federal Rule of Civil Procedure 6(b) application, claiming excusable neglect with regard to the June 1, 2009, deadline set at the May 7, 2009, hearing. However, in his response, counsel did not address his failure to provide the Court with an affidavit from the crew chief responsible for moving Plaintiff's property from the Andrews Street addresses, as he had said he would at the May 7 hearing.

On October 16, 2009, Plaintiff filed a "Reply to Motion to Strike." (Docket No. 85.) In it, he opposed any extension of the June 1 deadline, and asked the Court to strike "in entirety anything purporting to be a Response to my Motion to Strike." (Docket No. 85 ¶ 10.)

On October 27, 2009, Plaintiff filed a "Notice of Motion for Contempt/Sanctions." (Docket No. 86.) In his application for sanctions (Docket No. 86), Plaintiff alleges that:

> 3. On the 23rd February 2009 I served Defendants and filed with the court a Request for Production pursuant to Rule 34(b)(1). (Docket No. 40)
>
> 4. The record reflects the Defendants did not move against, or respond to the request in any way.
>
> 5. The record reflects the Defendants did not comply with the Court[']s order or in good faith object to it.
>
> 6. To date I have not be provide with the information I had requested.
>
> 7. The record reflects that Defendants have stated words to the effect that none of my property was at the Anderson Avenue property.
>
> 8. As an attorney John Campolieto is under oath at all times while appearing before this court and any intentional false statements are perjury and fraudulent.

> 9. On the 12th and 14th of October 2009 I observed my property through the open doors of 31 Arlington and 29 Anderson Avenue including but not limited to couches, stoves, refrigerator, signs, security cameras(fake),and ladder.
>
> 10. My property being at the Anderson Avenue property is contrary to the statement made by Defendants that none of my property was ever present there.

(Motion for Contempt/Sanctions (Oct. 27, 2009) (Docket No. 86) ¶¶ 3–10.) With respect to this application, Judge Feldman set a briefing schedule and Defendants responded through counsel (Docket No. 88), stating the following:

> 12. The only issue in this lawsuit is abandoned personal property at 366-366.5 Alexander Street, which the Plaintiff claims he retains an ownership interest. The Defendants provided the Plaintiff with a list of all of the abandoned property, which he abandoned at 366 Alexander Street in 2006 when the City initiated and completed an[] *in rem* foreclosure of that property. This list of items was included in the Defendants mandatory disclosures and served on or about June 8, 2009. That list is a full record of the abandoned property which was stored at City expense for over two years and finally sold by auction.
>
> 13. Any other personal property or real property which the Plaintiff claims exists or that he has an interest in is not part of this lawsuit. There was, and remains, no property applicable to this lawsuit, in the City Defendants possession after January 22, 2009.
>
> 14. Any items which were abandoned at any Arlington Avenue and/or Anderson Avenue property are not a part of this lawsuit. Items abandoned at Arlington Avenue and/or Anderson Avenue, though not part of this lawsuit, were deemed of no value, disposed of by the City of Rochester or remain junk/garbage to be removed from the property, which is owned by the City of Rochester and is currently being sold to a private buyer.

(Campoleito Aff. (Docket No. 88) ¶¶ 12–14.)

On December 21, 2009, Judge Feldman took Plaintiff's motion (Docket No. 86) for sanctions under advisement, and on March 30, 2010, he issued an Order (Docket No. 93) denying it.

On April 29, 2010, Plaintiff filed what he titled, "Refusal for Cause of Fraud" (Docket No. 95). In it, he argued that since Docket No. 86, his motion for Contempt and Sanctions requested relief in the form of a default judgment against Defendants, it was, therefore, dispositive in nature, and Judge Feldman did not have jurisdiction to issue a decision on that motion. (Docket No. 95 ¶¶ 3–8.) He further stated, "I hereby refuse said order for cause of fraud, am returning said order, and do not consent to it." (*Id*. ¶ 8.)

## STANDARDS OF LAW

The applicable statute is 28 U.S.C. § 636, the relevant portions of which include:

(b)(1) Notwithstanding any provision of law to the contrary–

(A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial[1] relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings

---

[1] So in original. Probably should be "post-trial."

or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C.A. § 636(b)(1)(A)–(C). In conjunction with the statute, Federal Rule of Civil Procedure 72 provides as follows:

> (a) Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.
>
> (b) Dispositive Motions and Prisoner Petitions.
>
> (1) Findings and Recommendations. A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement. A record must be made of all evidentiary proceedings and may, at the magistrate judge's discretion, be made of any other proceedings. The magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact. The clerk must promptly mail a copy to each party.
>
> (2) Objections. Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient.
>
> (3) Resolving Objections. The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72 (2009).

In *Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010), three Circuit Court judges, one of whom is the Chief Judge for the Second Circuit Court of Appeals, could not agree on whether a referral under § 636 includes the authority to rule finally on motions for sanctions under either Rule 11 or Rule 37. At issue in that case was a Rule 11 sanction ordered by the magistrate judge, and affirmed by the district court under the more deferential review provided by Federal Rule of Civil Procedure 72(a). Chief Judge Jacobs summarized the problem in the last paragraphs of his concurring opinion:

> For example, Judge CABRANES proposes to distinguish Rule 11 sanctions from Rule 37 sanctions on the basis of the traditionally "broad scope of a magistrate judge's authority over discovery disputes," which "provides the source of his authority to impose sanctions for the violation of discovery orders." Concurrence of Judge Cabranes at 8. But using such a broad principle to patrol the border between Rule 11 and Rule 37 sanctions can become quixotic. How does one classify misrepresentations regarding compliance (or not) with discovery obligations?
>
> On the other hand, holding that magistrate judges do possess authority to impose Rule 11 sanctions would create a confusing body of law as to what orders are dispositive under § 636(b), and the related question of when a lower court's order is appealable pursuant to the collateral order doctrine. For the reasons stated by Judge CABRANES, as well as the Sixth and Seventh Circuits (in Bennett and Alpern respectively), the imposition of Rule 11 sanctions is the functional equivalent of an independent claim;[2] for that reason, Rule 11 sanctions are immediately reviewable in this Court pursuant to the collateral order doctrine. *Sanko S.S. Co. v. Galin*, 835 F.2d 51, 53 (2d Cir.1987) (Rule 11 sanction is a reviewable collateral order, a "conclusive determination ... completely separate from the merits ... and [not] effectively reviewable on appeal from a final judgment"). If we follow Judge LEVAL's proposed holding, then Rule 11 sanctions could be referred to a magistrate judge as nondispositive for purposes of § 636(b), yet any imposition of sanctions would be dispositive enough to be immediately reviewable under the collateral order doctrine. This is incoherent.

---

[2]*See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (comparing Rule 11 sanctions to a criminal contempt charge insofar as each is "a separate and independent proceeding at law that is not part of the original action" (internal quotation marks omitted)).

> In sum, each of my colleagues would rewrite § 636, in a different way. I respectfully suggest that this knot needs to be untied by Congress or by the Supreme Court.

*Kiobel*, 592 F.3d 107 (Jacobs, C.J., concurring).

As to when sanctions for contempt are appropriate, the district court in *D'Orange v. Feely*, 959 F. Supp. 631, 634–35 (S.D.N.Y. 1997) observed:

> A court's inherent power to hold a party in civil contempt may only be exercised when "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *N.Y. State Nat. Organization for Women v. Terry*, 886 F.2d 1339 (2d Cir.1989), *cert. denied*, 495 U.S. 947 (1990); *EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n.*, 753 F.2d 1172, 1178 (2d Cir.1985), *affd*, 478 U.S. 421 (1986); *Nudelman v. Siag*, 1996 WL 451379, 2 (S.D.N.Y.1996).

**ANALYSIS**

Since the law is unsettled as to whether a magistrate judge has jurisdiction to determine a motion for sanctions such as the one filed in this case by Plaintiff, this Court will treat Plaintiff's "Refusal for Cause of Fraud"[3] as an appeal from Judge Feldman's Decision and Order on the issue of sanctions, only. The Court does not construe Plaintiff's "Refusal for Cause of Fraud" as disputing Judge Feldman's decisions on his applications for orders to compel separate counsel (Docket no. 53) or an order for extension of time to amend the pleadings and join parties (Docket No. 73).

On the question of whether Judge Feldman's denial of Plaintiff's motion (Docket No. 86) for sanctions was proper, this Court will employ a *de novo* review. Plaintiff's request for relief in his Motion to Compel (Docket No. 24), which Defendants did not oppose, was that,

---

[3]The Court also notes that it knows of no authority for Plaintiff's refusal to obey a court order. His remedy is to appeal the order, not refuse it.

"I be given one (1) day to inspect and/or inventory my personal property and be allowed to photograph and/or videotape my property," and "2. That after inspection of my personal property I be given two (2) days to respond back to the court if an amicable resolution may be reached." (Docket No. 24, at 6.) Plaintiff's application for contempt/sanctions (Docket No. 86), upon which Judge Feldman ruled, involved property allegedly being held by Defendants at 31 Arlington and 29 Anderson Avenue (Motion for Contempt/Sanctions (Oct. 27, 2009) (Docket No. 86) ¶ 9.) However, the only property at issue in this Court's Order of February 18, 2009 (Docket No. 37), is personal property allegedly taken by Defendants from 366-366.5 Alexander Street. That limitation was created by Plaintiff's own application (Docket No. 24) in which the only addresses listed were 382 Avery Street (Docket No. 24 ¶ 12) and 366–366.5 Alexander Street (Docket No. 24 ¶ 15). The Avery Street address was where Plaintiff alleged Defendants were *storing* the property taken from 366–366.5 Alexander Street. Accordingly, upon *de novo* review, Judge Feldman's Decision and Order (Docket No. 93) denying Plaintiff's motion for sanctions (Docket No. 86) is affirmed.

Turning to Plaintiff's motion to strike (Docket No. 76) Defendants' response (Docket No. 74) to Plaintiff's motion (Docket No. 59) for sanctions, the Court finds excusable neglect and grants Defendants' application for an extension to file its response. Thus, the Court will consider the information contained in Docket No. 74 when adjudicating Plaintiff's motion (Docket No. 59) for sanctions.

Plaintiff's discovery request, filed on February 23, 2009 (Docket No. 40), listed addresses at "366-366.5 Alexander Street, 23-31 Anderson Avenue and 31 Arlington Street, 179 North Union Street, 225 North Union Street, and 305 North Union Street." (Docket No. 40 ¶ 1.) He then moved to compel Defendants to permit him to inspect his property at those

addresses. (Docket No. 59.) Defendants responded on July 10, 2009 (Docket No. 74). In their response, Defendants' counsel stated, "The City sold all of the abandoned property on January 22, 2009 prior to any request for a full day inspection by the Plaintiff. Additionally, the City did allow the Plaintiff time to inspect the property prior to the auction." (Docket No. 74 ¶ 20.) In addition, Counsel stated, "[t]he Defendants did provide the Plaintiff with a list of all of the abandoned property he abandoned at 366 Alexander Street in 2006. This list of items was included in the Defendants' mandatory disclosures and served on or about June 8, 2009. This is a full record of the abandoned property which was stored at City expense for over two years and finally sold during the pendency." (*Id*. ¶ 53.)

With regard to Plaintiff's motion (Docket No. 59) for sanctions and to compel, the Court finds that the detailed response provided by Defendants sufficiently answered the discovery request. Further, Docket Nos. 40 and 59 seek an accounting of property in other locations, which Defendants contend were never under Plaintiff's control. After dismissing Plaintiff's claims with regard to the real property, the Court permitted the lawsuit to go forward with regard to " all claims pertaining to Plaintiff's allegations of deprivations of his constitutional rights with respect to Defendants' taking of his personal property" (Docket No. 68, at 5). Accordingly, Plaintiff's application (Docket No. 59) for sanctions and to compel is denied.

## CONCLUSION

This Court has repeatedly attempted to negotiate an arrangement for Plaintiff to remove his personal property, but each time Plaintiff has failed to follow through with the necessary means of removing and transporting his property. The Court, therefore, will leave the issue of further discovery to the magistrate judge. Accordingly, it is hereby

ORDERED, that Plaintiff's motion (Docket No. 59) for sanctions and to compel is denied; and it is further

ORDERED, that Plaintiff's "Refusal for Cause of Fraud" is construed as an appeal from Judge Feldman's Decision and Order (Docket No. 93) as it pertains to Plaintiff's motion (Docket No. 86) for sanctions; and it is further

ORDERED, that Judge Feldman's decision (Docket No. 93) as it pertains to Plaintiff's motion (Docket No. 86) for sanctions is AFFIRMED.

IT IS SO ORDERED.

Dated: July 30, 2010
       Rochester, New York

               ENTER:

                          /s/ Charles J. Siragusa
                          CHARLES J. SIRAGUSA
                          United States District Judge